Michael R. Dufour – SBN 290981
mdufour@swlegalgrp.com
SOUTHWEST LEGAL GROUP
22440 Clarendon Street, Suite 200
Woodland Hills, CA 91367
Tel: (818) 591-4300
Fax: (818) 591-4315

W. Craft Hughes (*Pro Hac Vice admission will be requested*)
craft@hughesellzey.com
Jarrett L. Ellzey (*Pro Hac Vice admission will be requested*)
jarrett@hughesellzey.com
HUGHES ELLZEY, LLP
Galleria Tower I
2700 Post Oak Boulevard, Suite 1120
Houston, TX 77056
Tel: (713) 554-2377
Fax: (888) 995-3335

*Counsel for Plaintiff and the Putative Class*

# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SAN DIEGO DIVISION

| | |
|---|---|
| MARY ANNE MASLO, SHELLY FRAZIER, JAMES GUFFEY, and NIVIA LANDON, individually and on behalf of all others similarly situated, | Case No. **'18 CV0741 CAB AGS** |
| | **PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| AIG DIRECT INSURANCE SERVICES, INC., | |

MARY ANNE MASLO, SHELLY FRAZIER, JAMES GUFFEY and NIVIA LANDON ("Plaintiffs"), individually and on behalf of all other persons similarly situated, brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant AIG DIRECT INSURANCE SERVICES, INC. (sometimes referred to herein as "Defendant") to stop Defendant's practice of making unsolicited telemarketing calls to the telephones of consumers nationwide, and to obtain redress for all persons injured by their conduct. Plaintiffs, for their

1   Complaint, allege as follows upon personal knowledge as to themselves and their own acts and
2   experiences, and, as to all other matters, upon information and belief, including investigation
3   conducted by their attorney.

4                                          **INTRODUCTION**

5       1.      Defendant is a large insurance provider. In an effort to solicit potential customers,
6   Defendant recruited, or employed call centers who began making telephone calls, *en masse*, to
7   consumers across the country beginning as early as 2012. On information and belief, Defendant
8   and or its agents purchase "leads" containing consumers' contact information and create electronic
9   databases from which Defendant and or its agents makes automated calls.

10      2.      Defendant conducted wide scale telemarketing campaigns and repeatedly made
11  unsolicited calls to consumers' telephones—whose numbers appear on the National Do Not Call
12  Registry—without consent, all in violation of the Telephone Consumer Protection Act, 47 U.S.C.
13  § 227 (the "TCPA").

14      3.      The TCPA was enacted to protect consumers from unsolicited telephone calls
15  exactly like those alleged in this case. In response to Defendant' unlawful conduct, Plaintiffs file
16  the instant lawsuit and seek an injunction requiring Defendant to cease all unsolicited telephone
17  calling activities to consumers registered on the National Do Not Call Registry and an award of
18  statutory damages to the members of the Class under the TCPA up to $500.00 per violation,
19  together with court costs, reasonable attorneys' fees, and treble damages (for knowing and/or
20  willful violations).

21      4.      By making the telephone calls at issue in this Complaint, Defendant caused
22  Plaintiffs and the members of a putative Class of consumers (defined below) actual harm, including
23  the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of
24  unsolicited and harassing telephone calls, as well as the monies paid to their carriers for the receipt
25  of such telephone calls.

26      5.      Plaintiffs bring this class action against Defendant to secure redress because
27  Defendant willfully violated the TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), 47 U.S.C §
28  227, *et seq.* by causing unsolicited calls to be made to Plaintiff's and other class members'

1    telephones through the use of an auto-dialer and/or artificial or pre-recorded voice message.

2                                                    **PARTIES**

3            6.      Plaintiff MARY ANNE MASLO is a natural person and citizen of Lemon Grove,

4    California.

5            7.      Plaintiff SHELLY FRAZIER is a natural person and citizen of Ash Grove, Missouri.

6            8.      Plaintiff JAMES GUFFEY is a natural person and citizen of Rome, New York.

7            9.      Plaintiff NIVIA LANDON is a natural person and citizen of Searcy, Arkansas.

8            10.     Defendant AIG DIRECT INSURANCE SERVICES, INC. is a corporation organized and

9    existing under the laws of the State of California with its headquarters located at 9640 Granite

10   Ridge Drive, Ste. 200, San Diego, California 92123.   Defendant may be served with process

11   through service upon its registered agent, Corporation Service Company d/b/a CSC-Lawyers

12   Incorporating Service, 2730 Gateway Oaks Drive, Sacramento, California 95833.

13           11.     Plaintiff does not yet know the identity of Defendant's employees/agents that had

14   direct, personal participation in or personally authorized the conduct found to have violated the

15   statute, and were not merely tangentially involved. They are named tentatively, as numerous

16   District Courts have found that individual officers/principals of corporate entities may be personally

17   liable (jointly and severally) under the TCPA if they had direct, personal participation in or

18   personally authorized the conduct found to have violated the statute, and were not merely

19   tangentially involved. *Texas v. American Blastfax, Inc.*, 164 F.Supp.2d 892, 899 (W.D. Tex. 2001)

20   ("*American Blastfax*"); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, 2014 WL

21   1333472, at * 3 (N.D. Ohio March 28, 2014); *Maryland v. Universal Elections*, 787 F.Supp.2d 408,

22   415-16 (D.Md. 2011) ("*Universal Elections*"); *Baltimore-Washington Tel Co. v. Hot Leads Co.*,

23   584 F.Supp.2d 736, 745 (D.Md. 2008); *Covington & Burling v. Int'l Mktg. & Research, Inc.*, 2003

24   WL 21384825, at *6 (D.C.Super Apr. 17, 2003); *Chapman v. Wagener Equities, Inc.* 2014 WL

25   540250, at *16-17 (N.D.Ill. Feb. 11, 2014); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 775

26   F.Supp.2d 1316, 1321 (D.Wy.2011) ("*Versteeg*").   Upon learning of the identities of said

27   individuals, Plaintiff will move to amend to name the individuals as DefendantS.

28           12.     Whenever in this complaint it is alleged that Defendant committed any act or

1   omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or

2   employees, subsidiaries, or affiliates committed such act or omission and that at the time such act

3   or omission was committed, it was done with the full authorization, ratification or approval of

4   Defendant, or was done in the routine normal course and scope of employment of the Defendant's

5   officers, directors, vice-principals, agents, servants, or employees.

6                                    **JURISDICTION & VENUE**

7           13.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action

8   arises under the TCPA, which is a federal statute.

9           14.     The Court has personal jurisdiction over Defendant because it conducts significant

10  business in this District, is headquartered in this District, and the unlawful conduct alleged in this

11  Complaint occurred in, was directed to, and/or emanated from this District.

12          15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the

13  wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this

14  District.

15                                 **LEGAL BASIS FOR THE CLAIMS**

16          16.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the

17  telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing…can

18  be an intrusive invasion of privacy…" Telephone Consumer Protection Act of 1991, Pub. L. No.

19  102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

20          17.     Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the

21  use of automated telephone equipment. The TCPA limits the use of automatic dialing systems,

22  artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies

23  several technical requirements for fax machines, autodialers, and voice messaging systems—

24  principally with provisions requiring identification and contact information of the entity using the

25  device to be contained in the message.

26          18.     In its initial implementation of the TCPA rules, the FCC included an exemption to

27  its consent requirement for prerecorded telemarketing calls. Where the caller could demonstrate an

28  "established business relationship" with a customer, the TCPA permitted the caller to place pre-

recorded telemarketing calls to residential lines. The new amendments to the TCPA, effective October 16, 2013, eliminate this established business relationship exemption.  Therefore, all pre-recorded telemarketing calls to residential lines and wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

19.     As of October 16, 2013, unless the recipient has given <u>prior express written consent,</u>[1] the TCPA and Federal Communications Commission (FCC) rules under the TCPA generally:

- Prohibits solicitors from calling residences before 8 a.m. or after 9 p.m., local time.
- Requires solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.
- Prohibits solicitations to residences that use an artificial voice or a recording.
- Prohibits any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or telephone.
- Prohibits any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (e.g., "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a telephone, or any service for which the recipient is charged for the call.
- Prohibits autodialed calls that engage two or more lines of a multi-line business.
- Prohibits unsolicited advertising faxes.
- Prohibits certain calls to members of the Do-Not-Call Registry

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.  47 C.F.R. § 64.1200(f)(8).

20.     Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (Dec. 31, 2012).

21.     Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call.  Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

22.     There are just a handful of elements need to be proven for violations of the Do Not Call provision of the TCPA.

**A.     DO NOT CALL VIOLATIONS OF THE TCPA**

23.     <u>More Than One Call within Any 12 Month Period</u>. 47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

24.     <u>Calls to Residential Lines on the Do Not Call List</u>. The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." *See* 47 C.F.R. § 64.1200(c).

25.     <u>Or, Wireless Lines on the Do Not Call List</u>. Owners of wireless telephone numbers (aka mobile or cellular phones) receive the same protections from the Do Not Call provision as owners or subscribers of wireline ("landline") phone numbers. 47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the

1    Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations

2    Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in

3    turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

9        26.    <u>The Affirmative Defense of Prior Express Consent</u>. The Ninth Circuit has defined

10    "express consent" to mean "clearly and unmistakably stated." *Satterfield v. Simon & Schuster, Inc.*,

11    569 F.3d 946, 955 (9th Cir. 2009) ("*Satterfield*")). "Prior express consent is an affirmative defense

12    for which the defendant bears the burden of proof." *See Grant v. Capital Management Services, L.P.*,

13    2011 WL 3874877, at *1, n.1. (9th Cir. Sept. 2, 2011) ("express consent is not an element of a TCPA

14    plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the

15    burden of proof"); see also *Robbins v. Coca-Cola Company*, No. 13-cv-132, 2013 WL 2252646, at

16    *2 (S.D. Cal. May 22, 2013).

## COMMON FACTUAL ALLEGATIONS

18        27.    Defendant is a large insurance company. In an effort to solicit potential customers,

19    Defendant obtained lists of potential customers from various sources. It proceeded to contact people

20    without having actual obtained consent to contact consumers on their cellular phones or

21    notwithstanding consumers' registration with the Do Not Call registry. In Defendant's overzealous

22    attempt to market its services, it placed phone calls to consumers who never provided consent to

23    call and to consumers having no relationship with Defendant. Worse yet, Defendant placed repeated

24    and unwanted calls to consumers whose phone numbers are listed on the National Do Not Call

25    Registry. Consumers place their phone numbers on the Do Not Call Registry for the express

26    purpose of avoiding unwanted telemarketing calls like those alleged here.

27        28.    Defendant knowingly made these telemarketing calls without the prior express

28    written consent of the call recipients, and knowingly continue to call them after requests to stop.

As such, Defendant not only invaded the personal privacy of Plaintiff and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

**FACTS SPECIFIC TO PLAINTIFF MARY ANNE MASLO**

29.     On or about July 27, 2003, Plaintiff Maslo registered her cellular phone number with the area code (619) and ending in 9079 with the National Do Not Call Registry.

30.     Beginning in 2013 and continuing through the winter of 2015, Plaintiff Maslo received calls on her cellular telephone from various numbers, including 858-309-3000 offering insurance products.  Plaintiff confirmed this number belonged to Defendant.

31.     Plaintiff Maslo is the regular carrier and exclusive user of the telephone assigned the number ending in 9079.  The number is assigned to a cellular telephone service for which Plaintiff is charged for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

32.     Plaintiff Maslo never had a business relationship with Defendant.

33.     Plaintiff Maslo never provided Defendant with prior express consent to contact her on her phone via a text message or a telephone call.

34.     Nonetheless, Defendant called Plaintiff Maslo at least thirty-three (33) times on her phone.  Defendant always tried to sell Plaintiff Maslo insurance products.

35.     Defendant routinely called Plaintiff Maslo while she was at work.  Plaintiff Maslo would explain that she had asked Defendant repeatedly to stop calling her, and that she was at work during most of the hours when Defendant would call.

36.     On each occasion when she answered a call from Defendant, Plaintiff Maslo heard call center noise in the background, and there was always a long pause before someone started speaking to her.  Plaintiff Maslo knew this meant Defendant was calling her with an autodialer, and Defendant's call center had failed to remove her number from a system that dialed her number automatically.

37.     Defendant's unsolicited telemarketing calls caused Plaintiff Maslo extreme aggravation, interrupted her work day, and occupied her telephone line.

38.     Plaintiff Maslo has reason to believe Defendant called thousands of telephone customers listed on the DNC to market their products and services.

39.    Plaintiff Maslo's overriding interest is ensuring Defendant ceases all illegal telemarketing practices and compensates all members of the Plaintiff Class for invading their privacy in the manner the TCPA was contemplated to prevent.

40.    In order to redress injuries caused by Defendant's violations of the TCPA, Plaintiff Maslo, on behalf of herself and a class of similarly situated individuals, brings suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited voice and text calls to cell phones.

41.    On behalf of the Plaintiff Class, Plaintiff seeks an injunction requiring Defendant to cease all illegal telemarketing and spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

**FACTS SPECIFIC TO PLAINTIFF SHELLY FRAZIER**

42.    On or about August 30, 2007, Plaintiff Frazier registered her cellular phone number with the area code (417) and ending in 4172 with the National Do Not Call Registry.

43.    Beginning in 2013 and continuing over the course of two years, Plaintiff Frazier received calls on her cellular telephone from various numbers, including 800-850-2792. The caller always said he or she was calling on behalf of Defendant and tried to sell Plaintiff Frazier insurance products.

44.    Plaintiff Frazier is the regular carrier and exclusive user of the telephone assigned the number ending in 4172.   The number is assigned to a cellular telephone service for which Plaintiff is charged for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

45.    Plaintiff Frazier never had a business relationship with Defendant.

46.    Plaintiff Frazier never provided Defendant with prior express consent to contact her on her phone via a text message or a telephone call.

47.    Nonetheless, Defendant called Plaintiff Frazier at least 100 times on her phone.

48.    Whenever Plaintiff Frazier would answer a call, she would explain that she had repeatedly asked Defendant to stop calling.   Nonetheless, Defendant continued to call Plaintiff Frazier.

49.    Defendant's unsolicited telemarketing calls were a major disruption to her daily routine because Plaintiff Frazier owns and runs a business.

50.     Plaintiff Frazier has reason to believe Defendant called thousands of telephone customers listed on the DNC to market their products and services.

51.     Plaintiff Frazier's overriding interest is ensuring Defendant ceases all illegal telemarketing practices and compensates all members of the Plaintiff Class for invading their privacy in the manner the TCPA was contemplated to prevent.

52.     In order to redress injuries caused by Defendant's violations of the TCPA, Plaintiff Frazier, on behalf of herself and a class of similarly situated individuals, brings suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited voice and text calls to cell phones.

53.     On behalf of the Plaintiff Class, Plaintiff seeks an injunction requiring Defendant to cease all illegal telemarketing and spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## FACTS SPECIFIC TO PLAINTIFF JAMES GUFFEY

54.     On or about January 24, 2006, Plaintiff Guffey registered his cellular phone number with the area code (315) and ending in 5321 with the National Do Not Call Registry.

55.     Beginning in the late summer of 2015 and continuing through March 2016, Plaintiff Guffey received calls on his cellular telephone from various numbers, including 800-850-2792. The caller always said he or she was calling on behalf of Defendant and tried to sell Plaintiff Guffey insurance products.

56.     Plaintiff Guffey is the regular carrier and exclusive user of the telephone assigned the number ending in 5321.  The number is assigned to a cellular telephone service for which Plaintiff is charged for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

57.     Plaintiff Guffey never had a business relationship with Defendant.

58.     Plaintiff Guffey never provided Defendant with prior express consent to contact his on her phone via a text message or a telephone call.

59.     Nonetheless, Defendant called Plaintiff Guffey at least thirty-five (35) times on his phone.

60.     Whenever Plaintiff Guffey would answer a call, he would ask to be placed on Defendant's do-not-call list.  Nonetheless, Defendant continued to call Plaintiff Guffey.

61.     On many occasions, Plaintiff Guffey was unable to answer Defendant's calls. Defendant, however, would leave a pre-recorded message on Plaintiff's voicemail requesting a return call.

62.     Also, on several occasions, Plaintiff answered calls from the number he recognized belonged to Defendant, but nobody greeted him on the other end of the line.  The calls would drop after several seconds of silence.  The total number of calls Defendant abandoned while Plaintiff was on the line for more than two seconds.

63.     Defendant's unsolicited telemarketing calls were a major disruption because Plaintiff Guffey works the late shift, and Defendant often called in the morning when he was sleeping.

64.     Plaintiff Guffey has reason to believe Defendant called thousands of telephone customers listed on the DNC to market their products and services.

65.     Plaintiff Guffey's overriding interest is ensuring Defendant ceases all illegal telemarketing practices and compensate all members of the Plaintiff Class for invading their privacy in the manner the TCPA was contemplated to prevent.

66.     In order to redress injuries caused by Defendant's violations of the TCPA, Plaintiff Guffey, on behalf of himself and a class of similarly situated individuals, brings suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited voice and text calls to cell phones.

67.     On behalf of the Plaintiff Class, Plaintiff seeks an injunction requiring Defendant to cease all illegal telemarketing and spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

**FACTS SPECIFIC TO PLAINTIFF NIVIA LANDON**

68.     On or about January 26, 2012, Plaintiff Landon registered her cellular phone number with the area code (501) and ending in 5385 with the National Do Not Call Registry.

69.     Beginning in the spring of 2015 and continuing over the course of several months, Plaintiff Landon received calls on her cellular telephone from various numbers, including 858-309-3000. The caller always said he or she was calling on behalf of Defendant and tried to sell Plaintiff Landon insurance products.

70.     Plaintiff Landon is the regular carrier and exclusive user of the telephone assigned the number ending in 5385.  The number is assigned to a cellular telephone service for which Plaintiff is charged for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

71.     Plaintiff Landon never had a business relationship with Defendant.

72.     Plaintiff Landon never provided Defendant with prior express consent to contact her on her phone via a text message or a telephone call.

73.     Nonetheless, Defendant called Plaintiff Landon at least 200 times on her phone.

74.     Whenever Plaintiff Landon would tell Defendant, "please take me off your list," or "please stop calling."  Nonetheless, Defendant continued to call Plaintiff Landon.

75.     Defendant's unsolicited telemarketing calls caused Plaintiff Landon annoyance and disrupted her daily routine.  She received at least three calls a day for the same purpose for several months, which caused Plaintiff Landon to feel harassed and upset.

76.     Plaintiff Landon has reason to believe Defendant called thousands of telephone customers listed on the DNC to market their products and services.

77.     Plaintiff Landon's overriding interest is ensuring Defendant ceases all illegal telemarketing practices and compensate all members of the Plaintiff Class for invading their privacy in the manner the TCPA was contemplated to prevent.

78.     In order to redress injuries caused by Defendant's violations of the TCPA, Plaintiff Landon, on behalf of herself and a class of similarly situated individuals, brings suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited voice and text calls to cell phones.

79.     On behalf of the Plaintiff Class, Plaintiff seeks an injunction requiring Defendant to cease all illegal telemarketing and spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

**STANDING**

80.     Plaintiffs have standing to bring this suit on behalf of themselves and the members of the class under Article III of the United States Constitution because Plaintiff's claims state: (a) a valid injury in fact; (b) an injury which is traceable to the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision. *See Spokeo v. Robins*, 578 U.S. __ (2016) at 6; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

**A.     INJURY IN FACT**

81.     Plaintiffs have standing to bring this suit on behalf of themselves and the members of the class under Article III of the United States Constitution because Plaintiffs' claims state: (a) a valid injury in fact; (b) an injury which is traceable to the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision.  *See Spokeo v. Robins*, 578 U.S. __ (2016) at 6; *Robins v. Spokeo*, 867 F.3d 1108 (9th Cir. 2017) (cert denied. 2018 WL 491554, U.S., Jan. 22 2018); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); and *Chen v. Allstate Inc. Co.*, 819 F.3d 1136 (9th Cir. 2016).

82.     Plaintiffs' injury must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution. *(Id.)*

83.     For an injury to be concrete it must be a de facto injury, meaning it actually exists. In the present case, Plaintiffs took the affirmative step of enrolling themselves on the National Do-Not-Call Registry for the purpose of preventing marketing calls to his telephone. Such telemarketing calls are a nuisance, an invasion of privacy, and an expense to Plaintiffs. *See Soppet v. enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).  All three of these injuries are present in this case.  (See also *Chen v. Allstate Inc. Co.*, 819 F.3d 1136 (9th Cir. 2016).)

84.     Furthermore, the Third Circuit recently stated, Congress found that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients," *Van Patten*, 847 F.3d at 1043, and sought to protect the same interests implicated in the traditional common law cause of action. Put differently, Congress was not inventing a new theory of injury when it enacted the TCPA. Rather, it elevated a harm that, while "previously inadequate in law," was of the same character of previously existing "legally

cognizable injuries." *Spokeo*, 136 S.Ct. at 1549. *Spokeo* addressed, and approved, such a choice by Congress. *Susinno v. Work Out World Inc.,* No. 16-3277, 2017 WL 2925432, at *4 (3d Cir. July 10, 2017).

85. For an injury to be particularized means that the injury must affect the plaintiff in a personal and individual way. *See Spokeo* at 7. Furthermore, Plaintiffs are the individuals who pay for the phone, and are the regular carrier and user of the phone. All of these injuries are particular to Plaintiffs.

**B.    TRACEABLE TO THE CONDUCT OF EACH SEPARATE DEFENDANT**

86. Plaintiffs must allege at the pleading stage of the case facts to show that their injury is traceable to the conduct of Defendant. In this case, Plaintiffs satisfy this requirement by alleging that Defendant, and/or agent of Defendant on behalf of Defendant, placed illegal calls to Plaintiffs' phone.

87. In the instant case, Defendant placed hundreds of calls to Plaintiffs' wireless/cellular phone on between 2013 and 2016.

**C.    INJURY LIKELY TO BE REDRESSED BY A FAVORABLE JUDICIAL OPINION**

88. The third prong to establish standing at the pleadings phase requires Plaintiffs to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion. In the present case, Plaintiffs' Prayers for Relief include a request for damages for each call made by Defendant, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiffs and the members of the putative class. Furthermore, Plaintiffs' Prayers for Relief request injunctive relief to restrain Defendant from the alleged abusive practices in the future. The award of monetary damages and the order for injunctive relief redress the injuries of the past, and prevent further injury in the future.

89. Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins,* 578 U.S. ___ (2016) and in the context of a TCPA claim, as explained by the Ninth Circuit in *Chen v. Allstate Inc. Co.*, 819 F.3d 1136 (9th Cir. 2016), Plaintiff has standing to sue Defendant on the stated claims.

# CLASS ACTION ALLEGATIONS

### A.    CLASS ALLEGATIONS

90.    Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of themselves and the following class defined as follows (the "Classes"):

> **"DNC[2] Class":** All individuals in the United States who: (1) received more than one telephone call made by or on behalf of Quicken Loans within a 12-month period; (2) to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days; and (3) for whom Defendant has no record of consent to place such calls.
>
> **Artificial & Prerecorded Voice Class:** All individuals in the United States who received a call made by or on behalf of Defendant to the individual's cellular or residential telephone through the use of an artificial or pre-recorded voice, during the four years prior to the initiation of this action, where Defendant's records fail to indicate prior express written consent from the recipient to make such call.

91.    The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and its current or former employees, officers, and directors; (3) Plaintiffs' counsel and Defendant's counsel; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released.

92.    This suit seeks only damages, statutory penalties, and injunctive relief for recovery of economic injury on behalf of the Classes, and it expressly is not intended to request any recovery for personal injury and claims related thereto.

93.    Plaintiffs reserve the right to expand the Class definitions to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

94.    Plaintiffs and members of the Classes were harmed by Defendant's acts in at least

---

[2] "DNC" referenced herein refers to the National Do Not Call Registry, established pursuant to 47 U.S.C. 227(c) and the regulations promulgated by the Federal Communications Commission ("FCC").

the following ways: Defendant, either directly or through agents, illegally contacted Plaintiff and the Class members *via* their telephones, after Plaintiff and the Class members took the affirmative step of registering their numbers on the DNC, and/or contacted Plaintiffs and members of the Classes using a pre-recorded voice for telemarketing purposes without first obtaining prior express consent.

**B.    NUMEROSITY**

95.    The exact size of the Classes is unknown and not available to Plaintiffs at this time, but it is clear individual joinder is impracticable.

96.    On information and belief, Defendant made telephone calls to thousands of consumers who fall into the definition of the Classes. Members of the Classes can be easily identified through Defendant' records.

**C.    COMMONALITY AND PREDOMINANCE**

97.    There are many questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes.

98.    Common questions for the Classes include, but are not necessarily limited to the following:

(a)    Whether Defendant's conduct violated the TCPA;

(b)    Whether Defendant systematically made telephone calls to consumers who did not previously provide Defendant and/or their agents with prior express written consent to receive such phone calls after October 16, 2013;

(c)    Whether Defendant systematically made telephone calls to consumers whose telephone numbers were registered with the National Do Not Call Registry;

(d)    Whether Defendant and/or its agents systematically made telephone calls to consumers using a pre-recorded voice, not for emergency purposes, and without prior express consent of the consumers.

(e)    Whether members of the Classes are entitled to treble damages based on the

willfulness of Defendant's conduct;

(f)     Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

**D.     TYPICALITY**

99.     Plaintiffs' claims are typical of the claims of the other members of the Classes.

100.    Plaintiffs and the Classes sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiffs and the Classes.

**E.     ADEQUATE REPRESENTATION**

101.    Plaintiffs will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex class actions.

102.    Plaintiffs have no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.

**F.     POLICIES GENERALLY APPLICABLE TO THE CLASSES**

103.    This class action is appropriate for certification because the four Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Classes members, and making final injunctive relief appropriate with respect to the Classes as a whole.

104.    Defendant's practices challenged herein apply to and affect the Classes' members uniformly, and Plaintiffs' challenge of those practices hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiffs.

**G.     SUPERIORITY**

105.    This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

106.    The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions.

107.    Thus, it would be virtually impossible for the individual members of the Class to

1   obtain effective relief from Defendant's misconduct.

2       108.    Even if members of the Classes could sustain such individual litigation, it would

3   still not be preferable to a class action, because individual litigation would increase the delay and

4   expense to all parties due to the complex legal and factual controversies presented in this

5   Complaint.

6       109.    By contrast, a class action presents far fewer management difficulties and provides

7   the benefits of single adjudication, economy of scale, and comprehensive supervision by a single

8   court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

9                           **FIRST CAUSE OF ACTION**

10                    **VIOLATION OF TCPA, 47 U.S.C. § 227**

11                              **("DNC Claim")**

12      110.    Plaintiffs re-allege and incorporate by reference each preceding paragraph as though

13  set forth at length herein.

14      111.    47 U.S.C. § 227(c) provides that any "person who has received more than one

15  telephone call within any 12-month period by or on behalf of the same entity in violation of the

16  regulations prescribed under this subsection may" bring a private action based on a violation of

17  said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid

18  receiving telephone solicitations to which they object.

19      112.    The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that

20  "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone

21  subscriber who has registered his or her telephone number on the national do-not-call registry of

22  persons who do not wish to receive telephone solicitations that is maintained by the federal

23  government." *See* 47 C.F.R. § 64.1200(c).

24      113.    47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c) and (d) "are

25  applicable to any person or entity making telephone solicitations or telemarketing calls to wireless

26  telephone numbers to the extent described in the Commission's Report and Order, CG Docket No.

27  02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection

28  Act of 1991,'" which the Report and Order, in turn, provides as follows:

The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

114.    Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless and residential telephone subscribers such as Plaintiffs and the DNC Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

115.    Defendant made more than one unsolicited telephone call to Plaintiffs and members of the Class within a 12-month period without their prior express consent to place such calls. Plaintiffs and members of the DNC Class never provided any form of consent to receive telephone calls from Defendant.

116.    Defendant violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiffs and the DNC Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

117.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiffs and the DNC Class members received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the DNC Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

118.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Class.

## SECOND CAUSE OF ACTION

### VIOLATION OF TCPA, 47 U.S.C. § 227

### ("Artificial & Pre-Recorded Voice Claim")

119.    Plaintiffs re-allege and incorporate by reference each preceding paragraph as though set forth at length herein.

120.    The foregoing acts and omission of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq.*

121.    For its Pre-Recorded Voice Claim, Plaintiff Guffey avers that he received multiple calls from Defendant through a pre-recorded voice for telemarketing purposes.

122.    Under 47 U.S.C. § 227(b)(1)(B), no person may initiate a call for non-emergency purposes using a pre-recorded voice without the prior express written consent of the called party.

123.    Plaintiff Guffey nor similarly situated class members gave Defendant prior express written consent to receive such calls; therefore Defendant violated 47 U.S.C. § 227(b)(1)(B) when it placed calls using a pre-recorded voice to Plaintiff Guffey and members of the Pre-Recorded Voice Class.

124.    As a result of Defendant's violations of 47 U.S.C. § 227, Plaintiff Guffey and the Class Members are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

125.    Plaintiff Guffey and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

126.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Class.

### ATTORNEY'S FEES

127.    Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

128.    Plaintiff is entitled to recover reasonable attorney fees under Rule 23 of the Federal Rules of Civil Procedure, and requests the attorneys' fees be awarded.

**JURY DEMAND**

129.    Plaintiff, individually and on behalf of the Class, demands a jury trial on all issues triable to a jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for the following relief:

(a)    An order certifying the DNC Class as defined above, appointing Plaintiffs as the representative of the Class, and appointing his counsel, HUGHES ELLZEY, LLP as lead Class Counsel;

(b)    An order certifying the Artificial and Pre-Recorded Voice Class as defined above, appointing Plaintiff as the representative of the Class, and appointing his counsel, HUGHES ELLZEY, LLP as lead Class Counsel;

(c)    An award of actual and statutory damages for each and every negligent violation to each member of the Classes pursuant to 47 U.S.C. § 227(b)(3)(B);

(d)    An award of actual and statutory damages for each and every knowing and/or willful violation to each member of the Classes pursuant to 47 U.S.C § 227(b)(3)(B);

(e)    An injunction requiring Defendant and Defendant's agents to cease all unsolicited telephone calling activities, and otherwise protecting the interests of the Class, pursuant to 47 U.S.C. § 227(b)(3)(A);

(f)    Pre-judgment and post-judgment interest on monetary relief;

(g)    An award of reasonable attorneys' fees and court costs; and

(h)    All other and further relief as the Court deems necessary, just, and proper.

1   Dated:  April 13, 2018

2

3                                              Respectfully Submitted,

4                                              MARY ANNE MASLO, SHELLY FRAZIER,
                                               JAMES GUFFEY and NIVIA LANDON,
                                               individually and on behalf of the Class
5                                              of similarly situated individuals,

6

7                                              _____ /s/ Michael R. Dufour _____
                                               Michael R. Dufour – SBN 290981
8                                              mdufour@swlegalgrp.com
                                               SOUTHWEST LEGAL GROUP
                                               22440 Clarendon Street, Suite 200
9                                              Woodland Hills, CA 91367
                                               Tel: (818) 591-4300
10                                             Fax: (818) 591-4315

11

12                                             W. Craft Hughes (*Pro Hac Vice admission will
                                               be requested*)
13                                             craft@hughesellzey.com
                                               Jarrett L. Ellzey (*Pro Hac Vice admission will be
                                               requested*)
14                                             jarrett@hughesellzey.com
                                               HUGHES ELLZEY, LLP
15                                             Galleria Tower I
                                               2700 Post Oak Boulevard, Suite 1120
16                                             Houston, TX 77056
                                               Tel: (713) 554-2377
17                                             Fax: (888) 995-3335

18
                                               *Counsel for Plaintiffs and the Putative Class*
19

20

21

22

23

24

25

26

27

28

Plaintiffs' Original Class Action Complaint         22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28